IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE AULDRIDGE, BILL BATES, GARY CHAMBERLAIN, DAVID COUFAL, GLEN DONHAM, WILLIAM DURFFEL, GEORGE HANSEN, CHARLES KIMBALL, PEGGY MARTIN, LAWRENCE REGO, KARL SHAFFER, ROBERT SWEENEY,<br><br>**Plaintiffs**,<br><br>v.<br><br>**MODESTO IRRIGATION DISTRICT,**<br><br>**Defendant.** | CV-F-04-6473 AWI DLB<br><br>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION |

This case comes before the Court on Plaintiffs' motion for summary adjudication. Plaintiffs Steve Auldridge, Bill Bates, Gary Chamberlain, David Coufal, Glen Donham, William Durffel, George Hansen, Charles Kimball, Peggy Martin, Lawrence Rego, Karl Shaffer, and Robert Sweeney (collectively, "Plaintiffs"), are or were employed by Defendant Modesto Irrigation District ("Defendant"). Plaintiffs brought the present motion for summary adjudication on the issue of the proper temporal allocation of settlement payments paid by Defendant under a settlement agreement reached by the parties. This Court grants Plaintiffs' motion for summary adjudication.

## PROCEDURAL AND FACTUAL HISTORY

Plaintiffs are or were dispatchers employed by Defendant who filed the instant action in 2004 under the Federal Labor Standards Act to recover overtime wages and liquidated damages.[1] The parties settled their dispute in April 2006, but specifically reserved the issue of how to allocate that portion of the settlement payment to each plaintiff that constituted overtime wages for purposes of calculating retirement benefits. The overtime wages, pursuant to the parties' settlement agreement, were reported as taxable wages on each plaintiff's IRS Form W-2 for 2006. Defendant administers two retirement plans for the benefit of its employees, the Basic Plan, which is a defined benefit pension plan, and the Supplemental Plan, which is a defined contribution pension plan. The overtime wages, again pursuant to the parties' agreement, were characterized as 2006 compensation under the Supplemental Plan. The issue before this Court is whether under the Basic Plan the overtime wages should be allocated to 2006, as Plaintiffs contend, or among the years 2000-2005, as Defendant contends.

## LEGAL STANDARD

Summary adjudication is proper when a court does not enter judgment upon the whole case. *See* Fed. R. Civ. P. 56(d). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party meets this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences drawn from the underlying facts must be

---

[1] Although Defendant filed objections to some of Plaintiffs' evidence on relevance grounds and for purported failure to conform to the local rules, the underlying facts are undisputed.

viewed in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-588 (1986).

## DISCUSSION

Plaintiffs argue that the terms of the Basic Plan require that the overtime wages should be characterized as 2006 compensation because such payments are deemed "Taxable Compensation," a defined term under the Basic Plan. Defendant concedes that the wage payments constitute Taxable Compensation, but argues the Basic Plan is silent or ambiguous regarding how to treat settlement payments that represent overtime wages. The real issue, in Defendant's view, is how the overtime wage payments should be allocated for purposes of determining "Average Monthly Compensation," also a defined term, under the Basic Plan. The Court understands the parties' dispute to be whether the overtime wage payments should be allocated to 2006 when they were actually paid or among the years 2000-2005 when they should have been paid.

*Language of the Basic Plan*

This Court's inquiry begins with the language of the Basic Plan. A participant's retirement benefits are calculated as a certain percentage of his or her "Average Monthly Compensation." *See* Exhibit B to Saltzman Declaration, Basic Retirement Plan ("Basic Plan"), § 6.01. "Average Monthly Compensation" is defined as "the monthly average of the Participant's Compensation over the 36 consecutive months of Credited Service out of his last 120 months of Credited Service during which such average is the greatest." *See id.*, § 1.05. "Compensation" is defined as an employee's "Taxable Compensation," plus various amounts not relevant here.[2] *See*

---

[2]Section 1.12 provides, in relevant part:

> "Compensation" shall mean an Employee's Taxable Compensation, plus:
> (a) The amount of his "regular contributions" to the Supplemental Retirement Plan for Employees of the District;
> (b) The amount of any compensation deferred by the Employee under the District's Deferred Compensation Plan or any other eligible

3

*id.*, § 1.12. "Taxable Compensation" is in turn defined as an employee's "wages, salaries, fees for professional services, and other amounts received for personal services actually rendered in the course of employment by the District," and excludes various amounts not relevant here.[3] *See id.* at § 1.42. Plaintiffs argue that the terms of the Basic Plan require that overtime wage payments be recognized as 2006 Taxable Compensation. Defendant does not dispute that overtime wage payments constitute "Taxable Compensation," but argues that the Basic Plan is silent, or at best ambiguous, as to how settlement payments, including reparations for unpaid overtime, should be allocated and, thus, that summary judgment is precluded. According to Defendant, the Basic Plan is reasonably susceptible to its interpretation that such payments are to be allocated to 2000-2005.

Whether a contract provision is ambiguous is a question of law. *Maffei v. Northern Ins. Co. of New York,* 12 F.3d 892, 898 (9th Cir. 1993) (applying California law). A contract is

---

state deferred compensation arrangement (as defined in section 457 of the Code); and
    (c)    The amount of any contributions by the District to a "cafeteria plan" governed by section 125 of the Code, or a plan governed by section 401(k) or 132(f)(4) of the Code, that are made at the Employee's election....

[3]Section 1.42 provides, in relevant part:

    "Taxable Compensation" shall mean, with respect to any Employee, the Employee's wages, salaries, fees for professional services, and other amounts received for personal services actually rendered in the course of employment by the District, but excluding the following:
    (a)    Contributions to this Plan and other plan of deferred compensation, to the extent deductible or not includable in gross income by the Employee...;
    (b)    Distributions from any plan of deferred compensation, other than an unfunded plan that is not qualified under section 401 of the Code;
    (c)    Amounts realized from the exercise of a stock option or the disposition of stock acquired on exercise of a stock option;
    (d)    Amounts realized on the vesting of restricted property;
    (e)    All other amounts that receive special tax benefits under the Code; and
    (f)    Amounts or payments received for cash out or voluntary sale of accrued benefits, including vacation, compensatory time, and sick leave....

ambiguous when it is capable of two or more constructions, both of which are reasonable. *See Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18. Courts will not strain to create an ambiguity where none exists. *Id*. at 19. If a contract is ambiguous ordinarily summary judgment is improper because differing views of the intent of parties will raise genuine issues of material fact. *See Maffei*, 12 F.3d at 898. In the absence of a factual dispute, resolution of ambiguity is a question of law for the court and summary judgment is proper. *JBC Lockwood v. Wolf Corporation*, 629 F.2d 603, 610 (9th Cir. 1980); *see also Levi Strauss & Co. v. Aetna Casualty and Surety Co*. (1986) 184 Cal. App. 3d 1479 (same).

This Court's review of the Basic Plan indicates that it is silent, rather than ambiguous, regarding how to allocate the overtime wage payments. Although courts cannot add a term to a contract about which the contract is silent, a contract's silence does not preclude a court from construing the contract where the only dispute is the interpretation of the contract terms. *See Levi Strauss,* 184 Cal. App. 3d at 1486 (construing contract on summary judgment where contract was silent on relevant term and party opposing motion argued the contract was ambiguous with respect to relevant term); *see also Continental Ins. Co. v. Metro Goldwyn Mayer*, 107 F.3d 1344, 1346 (9th Cir. 1997) (applying California law) ("No factual disputes exist in this case. The parties agree as to the content of the ... agreement; they differ only as to its interpretation."). In construing a silent contract, the court's function is to ascertain and declare what, in terms and substance, is contained in that contract, and not to insert what has been omitted. *Id.*, citing *Jensen v. Traders & General Ins. Co.* (1959) 52 Cal. 2d 786, 790-791. Intent is not at issue here and the parties' only disagreement is with respect to interpretation of the Basic Plan. To survive summary judgment, Defendant must set forth evidence that the Basic Plan is reasonably susceptible to more than one interpretation.

Plaintiffs' interpretation of the Basic Plan is persuasive. The Basic Plan defines Taxable Compensation, a constituent component of Compensation and Average Monthly Compensation, with respect to receipt of payment, not entitlement to payment or retroactive payment. "Taxable

5

compensation" is explicitly defined as an employee's "wages, salaries, fees for professional services, and other amounts *received* for personal services actually rendered in the course of employment." *See* Basic Plan, § 1.42. (emphasis added). The Basic Plan does not define the term "receive," but "[t]he words of a contract are to be understood in their ordinary and popular sense" in the absence of a specific definition given to a word by the parties or a technical use of the word. *See* Cal. Civ. C. § 1644. To receive means "to come into possession of." MERRIAM WEBSTER'S NEW COLLEGIATE DICTIONARY 956 (1973). Thus, the Basic Plan's use of the term "receive" means that the overtime payments are to be allocated according to when such payments "came into the possession of" Plaintiffs. Clearly under the contract Taxable Compensation is defined according to *receipt* of payment rather than *entitlement* to payment. The payments came into the possession of Plaintiffs in 2006, and should thus be allocated to 2006.

Both parties agree and there is no dispute that the overtime wage payments constitute Taxable Compensation.[4] Although Defendant argues that the Basic Plan is silent as to the characterization of settlement payments constituting retroactive overtime wages, Defendant agrees that the payments constitute Taxable Compensation, and the Basic Plan clearly defines Taxable Compensation according to receipt of payment. Contrary to Defendant's argument, the Basic Plan cannot reasonably be interpreted to define Taxable Compensation according to when the right to overtime payment arose, that is according to entitlement. There is no ambiguity in the Basic Plan on this point. *See Levi Strauss*, 184 Cal. App. 3d at 1486 ("Nor is the contract ambiguous on this point. Instead it is silent."). There is no term in the Basic Plan providing different treatment to overtime wage payments, even if they are in reparation for past overtime wages.

Defendant argues that although the definition of Taxable Compensation incorporates the term "received," the Basic Plan establishes no policy regarding temporal recognition of the

---

[4]Given that both parties agree that the settlement payments constitute Taxable Compensation, this Court assumes without deciding that the payments represent "amounts received for personal services actually rendered in the course of employment."

6

overtime wage payments. Defendant is correct that the Basic Plan is silent on this point, but is incorrect as to the effect of that silence. In Defendant's view, this silence or purported ambiguity means that its interpretation allocating the payments to 2000-2005 is plausible. The text of the Basic Plan does not support Defendant's argument nor does Defendant provide any evidence that supports its view. For example, Defendant does not argue, let alone present any evidence, that the Basic Plan's silence on this point is intentional.

Defendant also argues that interpretation of the Basic Plan is vested in Defendant's board of directors and administered by a retirement committee which has the discretion to interpret the Basic Plan. Under the Basic Plan, decisions by the retirement committee are "conclusive and binding on all interested parties, except as otherwise provided by law." Basic Plan, § § 10.01-10.03. Defendant argues that as the fiduciary its interpretation is binding, especially where Plaintiffs have not shown its interpretation is contrary to law. Defendant's argument, however, is unsupported by evidence that its board of directors or retirement committee have considered this matter or adopted the interpretation of the Basic Plan advocated by Defendant. Thus, Defendant fails to raise any material issue of fact precluding summary adjudication.

*Equity and Public Policy Considerations*

Defendant further argues that for reasons of equity and public policy, the Basic Plan should not be interpreted as advocated by Plaintiffs.[5] According to Defendant, retirement benefits are calculated according to Average Monthly Compensation earned during the time period marked by the beginning of employment and ending when an employee "quits, retires, is discharged or dies," or is absent from work for more than a year. *See* Basic Plan, §§ 1.05, 1.13,

---

[5] It is unclear what standing Defendant has to argue that equity or public policy is violated given that Plaintiffs are the ones advocating the position which is allegedly to their detriment. The Court notes that Defendant presents evidence that administration of the Basic Plan is administered by its board of directors and the retirement committee, but Defendant provides no evidence that it is opposing this motion in its capacity as trustee, nor has it provided evidence that the board of directors or retirement committee have considered these issues.

1.14, 1.36. Defendant argues that compensation received outside this time period would not be used to calculate Average Monthly Compensation, and provides evidence in the form of declarations that for five Plaintiffs this would mean that their retirement benefits would be unaffected by the overtime payments because they were no longer employed by Defendant in 2006 when the payments were made. *See* Declarations of Kenneth Winstead and Irma Perrone in Opposition to Plaintiffs' Motion for Summary Adjudication. In a similar vein, Defendant maintains that the remaining seven Plaintiffs would receive a windfall payment that would artificially inflate their Average Monthly Compensation, but presents no evidence of what effect such purported windfall would have on Plaintiffs. More fundamentally, defendant cites no law in support of its position nor does it identify the equity or public policy concerns implicated. "Public policy, in the context of a court's refusal to enforce a contract term, may be based on the policy expressed in a statute ... or may be implied from the language of such statute...." *Cariveau v. Halferty* (2000) 83 Cal. App. 4th 126, 132. Defendant cites no statutes which are purportedly violated, whether by letter or in spirit, by Plaintiff's interpretation.[6] "[U]nless it is entirely plain that a contract is violative of sound public policy, the court will never so declare." *Bovard v. American Horse Enterprises, Inc.* (1988) 201 Cal. App. 3d 832, citing *Stephens v. Southern Pacific Co.* (1895) 109 Cal. 86, 89-90.

***Prior Settlements Involving Retroactive Overtime Wage Payments by Defendant***

The parties dispute the admissibility of Defendant's treatment of prior settlements involving retroactive overtime wages, which in those settlements were purportedly allocated to the time period in which they were paid. Defendant argues that such evidence is inadmissible to establish liability for the instant claim under Fed. R. Evid. 408. Defendant also maintains that

---

[6] Defendant argues that Plaintiffs' interpretation "counters the purposes of the Basic Plan, which is drafted in a way that rewards eligible participants for consistent service to Defendant over a longer period of time," and cites to the definition of Average Monthly Compensation in support. The evidence cited by Defendant defines Average Monthly Compensation over a period of 10 years, but expresses no policy of rewarding consistent service, and is not a statute.

8

evidence that the parties agreed to allocate the overtime wage payments to 2006 under the Supplemental Plan is also inadmissible under the same rationale. Rule 408 provides that evidence of a compromise, such as a settlement, is not admissible "when offered to prove liability for, invalidity of, or [the] amount of a claim." Plaintiffs do not offer this evidence to prove Defendant's liability, or to establish the invalidity or the amount of any claim, and thus Rule 408 is inapplicable and evidence of characterization under prior settlements may be considered.[7] Plaintiffs, however, overstate the probative value of the prior settlements because, contrary to Plaintiffs' argument, such settlements are not controlling here. The prior settlements evidence Defendant's past treatment of settlement payments characterized as overtime payments, but, in the instant case, it is the language of the Basic Plan that is controlling.[8] This Court has already found that such language requires recognition of the overtime payments in 2006 when they were received by Plaintiffs.[9]

In summary, Defendant has raised no material issue of fact that the Basic Plan means anything other than what Plaintiffs advocate, that is Defendant failed to offered evidence that would allow a reasonable factfinder to interpret the Basic Plan as it does. To withstand a motion for summary adjudication, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary

---

[7] Rule 408 also prohibits evidence of a compromise "to impeach through a prior inconsistent statement or contradiction." This prohibition appears to apply to testimonial evidence, and Defendant does not argue that Plaintiffs offer evidence of prior settlements as impeachment evidence.

[8] Defendant's objections to the Declarations of Harvey Frantz and of Peter Saltzman on similar grounds are also overruled. Defendant's objections to Saltzman's declaration for failure to conform to Local Rule 56-260 are also overruled.

[9] Plaintiffs also argue that the terms of the Basic Plan reflect IRS regulations that require such characterization. The Court need not address this argument given the disposition of the case.

9

adjudication is proper when a party fails to provide evidentiary support for its interpretation of a contract. *See National Union Fire Ins. Co. of Pittsburgh v. Argonaut Insurance Company*, 701 F.2d 95, 97 (9th Cir. 1983) ("National cannot rely on the mere possibility of a factual dispute as to intent to avert summary judgment. Nor can it expect the district court to draw inferences favorable to it when they are wholly unsupported."); *see also Levi Strauss*, 184 Cal. App. 3d at 1486. On this record, the only reasonable interpretation of the Basic Plan is that retroactive overtime payments are to be allocated according to when the payments were received by Plaintiffs. On summary adjudication, the issue for this Court is to determine whether it is possible for a reasonable factfinder to interpret the Basic Plan as advocated by Defendant. This Court has concluded that it is not.

**CONCLUSION AND ORDER**

For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that Plaintiffs' motion for summary adjudication is GRANTED.

IT IS SO ORDERED.

Dated:   **August 29, 2007**          /s/ **Anthony W. Ishii**
                                      UNITED STATES DISTRICT JUDGE